Appeal No. 243022 Good morning, Mr. Shepard. Good morning, Your Honor. Good morning, Your Honors. I am Adam Shepard, and I represent the appellant, Jose Sanchez. The principal issue I'd like to focus on today is the application of a cross-reference provision which elevated the guideline range in this case by eight years. Our position is that it effectively punished or enabled a sentence for production which carries a statutory 15-year mandatory minimum on a lesser standard of proof. Now, that's, of course, permitted by the guidelines because the government need only prove by a preponderance of the evidence that this cross-reference would apply. But nonetheless, that is a burden. It's not a scintilla of evidence. It's not. No evidence. The evidence in this case established that Mr. Sanchez communicated, and this is language from the plea agreement, with one who he believed to be a minor, purported to be a minor. Our position is that the plain language of the guideline doesn't apply to that instance. The plain language covers three specific scenarios. One, where there's, it defines a minor, an individual who is 18, or a law enforcement officer who holds themselves out to be a minor. And then the third possibility is an undercover law enforcement officer who represented to a participant that the officer had not attained the age of 18. None of those apply. So, if we are going to, or if the district court was justified in increasing the guideline range by approximately eight years, our position is that the government should be held to a strict burden, albeit a lesser one of preponderance. Now, in this case. Counsel, what, in your calculations, if the enhancement hadn't been applied, what would the total offense level then be? The total, I believe I calculated it, first I know the guideline range, 57 to 71 months, I believe our total offense level would have been a 25. A 25, does that account for all of the other enhancements other than the cross-reference? Yes. But, the, we, that would have been the, we proposed to the district court to decline the enhancement and impose the top of the, our proposed guideline range of 71 months. And, therefore, we believe that that would be a reasonable sentence. Now, it may not be, of course, possible, of course, to your honors, to reduce the sentence to that, to a specific number. Even a remand, though, would allow the evidentiary record to be developed. We didn't raise this argument out of thin air. A special agent testified before the- Didn't, Mr. Shepard, didn't the district judge say she would impose the same sentence with or without the cross-reference? The district court did make that statement in response to the government's question of whether the district court would do so. And we believe that that inoculating statement, in this case, would not sufficiently address that issue. Because, without the increase, the top of the range would have been 71 months. And we believe that an upward variance of nearly eight years may not have survived substantive reasonableness, in this case, because it would have been an upward variance from the guidelines of eight years. Now, it could be, but it would need to be sufficiently tied to other issues in the record. I think that one of the most aggravating factors for the district court was that the defendant had posed as a female. Understandable. No quarrels with that. But that was already accounted for by another enhancement. So, to increase the sentence by eight years on top of that, we don't think that it would have been sufficiently tied to the record to be considered a valid inoculating statement. I guess I'm a little puzzled because when I went back and tried to calculate kind of what the total offense level would be without the cross-reference enhancement, I got that the total offense level would be 32 without it. Because you have the base level after the grouping would be 22. And then you have the two levels for involving a minor under 12. You have four levels for abuse of a toddler. You have two levels for the computer. Five levels for number of image. And then you reduce for the three levels for substance responsibility. I guess I don't understand how you got to the offense level that you did. And it matters because you're right. I think that if a district judge, you know, uses an inoculating statement, what is relevant is how disparate the two sentences ranges are. And so, can you take me through how you got to the calculation that you did? If the ordinary base offense level without the cross-reference would have been 22, or the PSR had it as 18, that would have reduced it by, that alone would have reduced it by 10 levels. Turning to the other guideline calculations, there was a four-level increase for a minor not having attained the age of 12. That could arguably have been, take the level to 26. A four-level increase if the material portrayed the abuse of an infant or toddler. That would be 30. A two-level increase if it involved the knowing misrepresentation, 32. Drop down by three points for acceptance. That would have been 27. Initially, we had objected. The difference between the 27 and the 25 is initially we had objected at sentencing to the knowing misrepresentation because it was based on occurring during a live stream. We had argued. What about the enhancement for the number of images? E7D, is there a five-level enhancement for that? In here, there was not, according to the plea agreement which was applied here, there wasn't an enhancement. It was only 50, I think, photos and 35 videos. In the plea agreement, there was 2G2.1. That's what increased the base offense level. Then not having attained the age of 12, the portrayal of an infant, 2G2.1B4, and the misrepresentation of identity was applied 2G2.1B6, which would take it to a 42 before acceptance points. That's how we got our guideline. I just want to add this one aside other than the definition of a minor. The word lascivious exhibition, we do believe connotes in this instance because the government's theory was that the request, essentially, for production occurred during a live stream. In that instance, we believe that language is connoting an active showing. We quoted that language in our brief, showing with I-N-G. So here, because it could have been prerecorded footage, the agent raised that possibility. There wasn't a preponderance of a present showing. I'm not saying it has to happen in every case, but when the government's theory is that it occurred during a live stream, like during the Nickerson case from this court, they should have to prove that occurred while or during, I think, was the language Nickerson used during the live stream. Thank you. Thank you. If I may reserve for rebuttal. Yes, you may. Thank you. Thank you, Mr. Shepard. And good morning to you, Ms. Partham. May it please the court. Michelle Partham for the United States. The district court committed no reversible error in defendant's sentencing, and his sentence should be affirmed. Turning first to the cross-reference, the district court did not err in applying the cross-reference to calculate the defendant's offense level. Ms. Partham, what, in the government's view, would the total offense level have been had the cross-reference not been applied? Your Honor, I did not calculate that coming into today. I'd be happy to submit something after the hearing on that for the court's convenience. But as Your Honor was walking through the calculations that you were making, that sounded correct. The counts one and two are grouped together, and so the enhancement for number of images would apply in calculating the offense level. And because each moving image counts as 75 images for guidelines purposes, he would easily be in the highest bracket in terms of image count for purposes of that enhancement. So I agree with the point Your Honor made, that if the cross-reference had not been applied, the defendant's guidelines range would have been likely very similar to what it ended up being with the application of the cross-reference. And the cross-reference was appropriately applied because defendant admitted to everything necessary for that enhancement to apply in his plea agreement. In the plea agreement, he admitted that he falsely posed as a 17-year-old girl on an internet chat site, that he then communicated with victim A, a real 11-year-old girl who was identified by law enforcement as a real person and who told the defendant that she was 11 years old. He admitted that he asked her to send him naked images, told her he'd like to see her, quote, boobies and wanted to see her, quote, butt, and that the victim then sent him images of her naked body that he admitted constituted child pornography. Those admissions are sufficient for application of this enhancement. The application note in the guidelines says that this enhancement is to be construed broadly to include all instances where a defendant employs, uses, persuades, induces, or entices a minor to engage in sexually explicit conduct. And what defendant did here fits well within that definition. And it's consistent with the purpose of this cross-reference, which is to distinguish offenders who possess child pornography or receive or send it from the more aggravated category of offenders who participate in the creation of those images. So I was reading the cross-reference provision 2G2.2C1, and I keep getting stuck on the phrase for the purpose of, for the purpose of producing. Because I think on the one hand, one could argue that for the purpose of might indicate that whatever image it was that's the subject of the cross-reference didn't exist at the time. Because you are, because the offender is trying to cause, say, sorry, cause for the purpose of producing a visual depiction. And you wouldn't have to be for the purpose of if one already existed. I guess another interpretation could be for the purpose of is really focused on the subjective intent of the violator, right, the perpetrator. So it doesn't really matter whether the depiction was preexisting or not, because what the provision is focusing on is the, what was the purpose of the perpetrator in making that inquiry or making that solicitation. I take it that the government, your position is that the second of the two interpretations is the correct one? I think it's a little bit of both. I think that the enhancement absolutely focuses on the offender's subjective intent, particularly the portion where it says seeking by notice or advertisement. It's focused on what is this person looking for. And then for the purpose of producing, they have to be asking the minor to engage in sexually explicit conduct for that purpose of producing images. Now, if the defendant knew for an absolute fact that these images had been created at some earlier time and said to the minor, send me that image you created last year, that probably would not apply here. But that's not the case that we have here. Here we have the offender saying to the minor, let me see your boobies. Let me see your butt. He's asking for it to be happening right now. Based on the communications, when the offender's asking the victim to create images, that solicitation alone is enough. Now, if the minor had created the images a year earlier and she sent it to the offender and he had no reason to know that the images had been previously created, I think his solicitation would be enough. And it wouldn't be in any way undermined by the fact that the images had been earlier created. But again, in this case, based on what this offender said to this minor, it's clear he was asking her to create images. And she then did that. He received them and he saved them. And so it's clear that the enhancement applies because he is that more in his misconduct. And none of the arguments that the defendant has made here undermine the fact that his admissions in the plea agreement are sufficient to trigger this cross-reference. He made the argument, defense counsel made the argument that maybe we don't know if minor A actually sent the images and that the minor in this case falls outside of the definition in the guidelines. But that's not the case because in the plea agreement he admitted that he was communicating with minor A herself. She sent the images and he received them from her. So there is no doubt that in this case the definition of minor as being someone who's under the age of 18 is what applies and fits the facts that he admitted to here. And while there is no error that the district court committed in applying this enhancement, Judge Tableson as you noted, any error that could arguably have occurred would be harmless because the district court made clear it would have imposed the same sentence regardless. And she explained why that was because she was so troubled by the fact that this defendant used a depiction of a 17-year-old girl during this video chat as a way of luring minors to send him images. The district court commented on how exceptionally aggravating that was. And so she explained why under that particular fact pattern the sentence that she had selected here would be appropriate regardless of the applicability of the enhancement. And that really makes sense because regardless of the nuances of the particular language around the enhancement, whether someone counted as a minor under the definition, the defendant's conduct is what the defendant was. Nothing that the defendant has raised in his materials here undermines his culpability, his mens rea, what he was intending subjectively in communicating with the minor. So in terms of selecting a sentence that is appropriate for the conduct that the district court was so troubled by, none of the things that has been put forth before this court would impact that. And that's why any error would be harmless. In addition to the fact that we were discussing earlier, Judge Lee, about the fact that even under the other provision, the guidelines would be so high because of all of the various aggravators in the conduct here. If the court would like, I'd be happy to address the arguments around the procedural error and considering mitigation and the substantive reasonableness of the sentence. But if there are no further questions, the government asks that the hearing be adjourned. All right. Well, thank you, Ms. Bartham. And Mr. Shepard, we'll give you your rebuttal time. We'll give you a minute. First, the exact language of the plea agreement was that Mr. Sanchez engaged in communication with someone who represented that she was an omegle. There are ways for the government possibly to have proven this. There's subpoenas and IP addresses. There's a reasonable inference that a minor might be on a site. If it was a site that maybe minors used, there was no evidence that omegle was a site for minors. And why necessarily would a minor be on an omegle? The government attempted to interview victim A. She declined. So there are ways to attempt to prove it, but they didn't. Instead, they're relying on the broad language of the plea agreement that maybe the images emanated, quote, from victim A. But right there in the plea agreement, it's someone who represented. Second, I did check the PSR. There was no enhancement for the number of images, given that they used the cost reference. The PSR may have parentheticals. Had they used the ordinary guideline, there could have been an enhancement. It still would have been a seven-level difference, a 38, I think, versus a 31. So even at a level 31, it would have been 108 to 135 months versus the 188 for 10 months that the district court arrived at. Thank you. Thank you. We will take the case under advisement. Thank you.